IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELLIOT WOLFF, Personally and as Trustee of | ) ) ) |
| THE TRUST ESTABLISHED UNDER ARTICLE III OF THE ESTATE OF EGON WOLFF | ) ) ) ) |
| 3001 Veazy Terrace NW Apt. 1016 Washington, D.C. 20006 | ) ) ) ) |
| Plaintiffs | ) |
| v. | ) ) |
| WESTWOOD MANAGEMENT, LLC 5110 Ridgefield Rd. Suite 404 Bethesda, Maryland 20316 | ) ) ) ) ) ) |
| and | ) ) |
| WESTWOOD CONSTRUCTION COMPANY, INC. c/o Richard A. Bloom, Esq. 6817 Massena Court Bethesda, Maryland 20816 | ) ) ) ) ) ) |
| and | ) ) |
| INVESTOR'S HOLDING CORPORATION 13972 Baltimore Boulevard Laurel, MD 20707 | ) ) ) ) ) |
| and | ) ) |
| THE LASZLO N. TAUBER REVOCABLE TRUST c/o Roger Pies Baker & Hostetler, LLP 1050 Connecticut Avenue, NW Washington, D.C. 20036 | ) ) ) ) ) ) ) |

| | |
|---|---|
| and | ) |
| | ) |
| **LASZLO N. TAUBER M.D. &** | ) |
| **ASSOCIATES, LLC** | ) |
| **5110 Ridgefield Rd.** | ) |
| **Suite 404** | ) |
| **Bethesda, Maryland 20316** | ) |
| | ) |
| and | ) |
| | ) |
| **LASZLO N. TAUBER &** | ) |
| **ASSOCIATES I, LLC,** | ) |
| **5110 Ridgefield Rd.** | ) |
| **Suite 404** | ) |
| **Bethesda, Maryland 20316** | ) |
| | ) |
| and | ) |
| | ) |
| **LASZLO N. TAUBER &** | ) |
| **ASSOCIATES II, LLC** | ) |
| **5110 Ridgefield Rd.** | ) |
| **Suite 404** | ) |
| **Bethesda, Maryland 20316** | ) |
| | ) |
| and | ) |
| | ) |
| **LASZLO N. TAUBER &** | ) |
| **ASSOCIATES VI, LLC** | ) |
| **5110 Ridgefield Rd.** | ) |
| **Suite 404** | ) |
| **Bethesda, Maryland 20316** | ) |
| | ) |
| and | ) |
| | ) |
| **LNT&A MASTER LLC** | ) |
| **5110 Ridgefield Rd.** | ) |
| **Suite 404** | ) |
| **Bethesda, Maryland 20316** | ) |
| | ) |
| and | ) |
| | ) |
| **JOHN DROKE** | ) |
| **4814 Kemper Street** | ) |
| **Rockville, Maryland 20853** | ) |
| | ) |
| **Defendants** | ) |

2

## **PLAINTIFFS' ORIGINAL COMPLAINT**

## **JURISIDICTION AND PARTIES**

1. The Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1332.  All defendants are residents of the State of Maryland, and the Plaintiffs are residents of the District of Columbia.

2. This dispute relates to the Defendants' use and sale of real property situated in the District of Columbia in which Plaintiffs have an ownership interest via their membership in the District of Columbia Joint Venture (DCJV).  As a result, venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(a)(2).

3. Plaintiff Elliot Wolff ("Wolff") is a resident and citizen of the District of Columbia.  Plaintiff Wolff is the trustee of co-Plaintiff, the Trust Established under Article III of the Will of Egon Wolff Trust ("Wolff Trust"), which Trust owns an eighty percent (80%) interest in Egon Wolff's original interest in the DCJV (which, on information and belief, has been referenced from time to time as if it were two joint ventures, the District of Columbia Land Joint Venture and the District of Columbia Joint Venture).  Individually, by operation of the Will of Egon Wolff, Plaintiff Elliot Wolff owns twenty percent (20%) of Egon Wolff's original interest in the DCJV.

4. The DCJV owned land situated at, or identified as, 2100 2nd St. SW, Washington, D.C., on which the Transpoint Building was constructed ("the Transpoint Property") and a one-half acre parcel located immediately adjacent thereto ("the Adjacent Lot").

5. Dr. Laszlo N. Tauber, M.D. transferred the Transpoint Property and the Adjacent Lot to Defendant Laszlo N. Tauber & Associates I, LLC (Tauber I) on January 2, 1999. Defendants held Plaintiffs' interests in the DCJV in trust. Plaintiffs thereby gained a right, tantamount to the right of a member, to bring a derivative action on behalf of Tauber I.

6. On November 4, 2004, Defendant Tauber I transferred the Adjacent Lot to Defendant Laszlo N. Tauber & Associates VI, LLC ("Tauber VI"). Plaintiffs' interests in the DCJV were held in trust by Defendant Tauber VI. Plaintiffs thereby gained a right, tantamount to the right of a member, to bring a derivative action on behalf of Tauber VI.

7. Defendant Westwood Management, LLC ("Westwood") is a limited liability company, organized in the State of Maryland, with its principal place of business at 5110 Ridgefield Road Suite 404, Bethesda, Maryland, in Montgomery County. Westwood, by and through its officers and agents acted on behalf of Laszlo N. Tauber M.D., and the Estate of Laszlo N. Tauber, M.D., the Defendant LLCs and other related business organizations and trusts, and specifically in that capacity mortgaged, refinanced and conveyed property in which the Plaintiffs had an ownership interest.

8. Defendant Investor's Holding Corporation ("IHC") (formerly Westwood Management Corporation) is a Corporation formed in the state of Maryland, with a principal address of 13972 Baltimore Boulevard, Laurel, Maryland 20707. Defendant IHC served as a property manager for the real estate holdings of Laszlo N. Tauber, MD and the Defendant LLCs and other related

business organizations and trusts, including the Transpoint Building and the Adjacent Lot.  Defendant IHC additionally owned a wholly owned subsidiary, Defendant Westwood Construction Company that acted as a general contractor, performing construction supervision and project management services on tenant improvements in the Transpoint Building and Adjacent Lot.

9. Defendant, Laszlo N. Tauber M.D. & Associates, LLC ("Tauber MD") is a limited liability company, organized in the State of Maryland, with its principal place of business at 5110 Ridgefield Road Suite 404, Bethesda, Maryland, in Montgomery County.  Tauber MD knowingly received the proceeds or the benefit of the proceeds of mortgages, refinances and conveyances of property in which the Plaintiffs had an ownership interest.

10. Defendant Tauber I is a limited liability company, organized in the State of Maryland, with its principal place of business at 5110 Ridgefield Road Suite 404, Bethesda, Maryland, in Montgomery County.  Tauber I knowingly received the proceeds or the benefit of the proceeds of mortgages, refinances and conveyances of property in which the Plaintiffs had an ownership interest.

11. Defendant, Laszlo N. Tauber & Associates II, LLC ("Tauber II") is a limited liability company, organized in the State of Maryland, with its principal place of business at 5110 Ridgefield Road Suite 404, Bethesda, Maryland, in Montgomery County.  Tauber II knowingly received the proceeds or the benefit of the proceeds of mortgages, refinances and conveyances of property in which the Plaintiffs had an ownership interest.

12. Defendant, Laszlo N. Tauber & Associates VI, LLC (Tauber VI) is a limited liability company, organized in the State of Maryland, with its principal place of business at 5110 Ridgefield Road Suite 404, Bethesda, Maryland, in Montgomery County. Tauber VI knowingly received the proceeds or the benefit of the proceeds of mortgages, refinances and conveyances of property in which the Plaintiffs had an ownership interest.

13. Defendant, LNT & A Master, LLC ("LNT&A") is a limited liability company, organized in the State of Maryland, with its principal place of business at 5110 Ridgefield Road Suite 404, Bethesda, Maryland, in Montgomery County. LNT & A Master, LLC knowingly received the proceeds or the benefit of the proceeds of mortgages, refinances and conveyances of property in which the Plaintiffs had an ownership interest.

14. Defendant John C. Droke ("Droke") is a resident of the state of Maryland residing at 4814 Kemper St., Rockville in Montgomery County, Maryland. At all times relevant to the facts asserted in the Complaint, Mr. Droke was the managing member of Defendant Westwood, the President of Defendant IHC, and the President of Defendant Westwood Construction and knowingly refinanced, mortgaged, and conveyed properties in which the Plaintiffs had an ownership interest.

15. Defendant Westwood Construction Corporation, Inc. ("Westwood Construction") was incorporated in the State of Maryland. Westwood Construction's principal office is located at 5110 Ridgefield Road, Bethesda, Maryland 20816. Defendant Westwood Construction was dissolved on or

about August 25, 2005, but, is still in the process of winding up its affairs and retains a resident agent, Edward A. Bloom Esq. 6817 Massena Court, Bethesda, Maryland 20817, for that purpose. Defendant Westwood Construction's sole stockholder was Defendant IHC (formerly known as Westwood Management Corporation).

16. Defendant Laszlo N. Tauber Revocable Trust ("Tauber Trust")is a revocable trust established in Montgomery County Maryland on October 25, 2001. On information and belief, Roger Pies, Esq. is the agent for the Tauber Trust.

## BACKGROUND FACTS

17. On or about May 18, 1971 Egon Wolff entered into the "District of Columbia Joint Venture Agreement" (hereinafter "DCJVA"). The DCJVA stated that its purpose was to "have erected an office building complex containing approximately 500,000 square feet of rentable space on approximately 115,000 square feet of land area in the District of Columbia."

18. Subsequent to May 18, 1971, the DCJV gained ownership of the Adjacent Lot, a one-half acre parcel of land adjacent to the Transpoint Building, which property is known for assessment and taxation purposes as Original Lots numbered Four, Five and Six and Lot numbered Eight Hundred Four in Square numbered South of Square numbered Six Hundred Sixty Seven.

19. According to the DCJVA, Para. 13, Egon Wolff was entitled to an "ownership interest [of] 0.5% in the land and 0.25% in the building."

20. Pursuant to the DCJVA, Para. 3, title to the property was to be held in the name of LNT Corporation, or in the name of Dr. Tauber "as Trustee for all

persons who come into the venture, or in the name of the District of Columbia Joint Venture."

21. Dr. Tauber acknowledged that Mr. Wolff was a "beneficial owner to the extent of [his] participating interest, as a Tenant in Common."

22. By letter dated November 27, 1984, Plaintiffs notified the Defendants of the Death of Egon Wolff and confirmed that the Estate of Egon Wolff's 0.25% interest in the D.C. Joint Venture and 0.5% interest in the D.C. Land Joint Venture were to be transferred, 80% to the Trust and 20% to Elliot R. Wolff.

23. By letter dated December 6, 1984, Dr. Tauber communicated his intention to "merge" the DCJV and approximately seventeen other partnerships that Dr. Tauber managed into "one single partnership." Owners of the DCJV were provided the following options: A) sale of their interests; B) to convert their ownership interests into "a guaranteed cash flow payment for a guaranteed period of time;" or C) participation in the combined partnership according to the value of the interests the participant merged. The December 6, 1984 letter additionally offered: "If anybody has any second thoughts and is not willing to cooperate, I will put his/her interest in trust."

24. By letter dated December 13, 1984, the Plaintiffs provided notice that they were unwilling to accept the terms provided in the December 6, 1984 letter. In numerous correspondences thereafter, the Plaintiffs repeated their refusal to sell their interest in the DCJV or to have their interests consolidated into a larger partnership.

25. No Defendant ever disputed the obligation to hold the Wolff interest in trust.

8

26. By letter dated January 14, 1994, Dr. Tauber offered Plaintiffs the opportunity to convert their interest in the D.C. Joint Venture into interests in a Real Estate Investment Trust. This letter indicated that if the Defendant did not receive a response, the participant's interest would remain unchanged. The Plaintiffs' never accepted to have their interests consolidated into the REIT, and on information and belief, the proposed REIT was never effectuated.

27. In 1999, the Transpoint Building and the Adjacent Lot were transferred, along with three other properties to Tauber I.

28. Defendant Tauber, and/or his successors in interest, and/or Defendant Westwood and/or Defendant IHC and/or Defendant Tauber I, by and through Defendant Droke undertook the following (and possibly other) refinances on the Transpoint Building and/or the Adjacent Lot:

   a. 1973 for $15 million;

   b. A June 1987 refinance for $58 million;

   c. A June 1993 refinance for $28.8 million. On information and belief, $10.5 million of this amount was distributed to the Laszlo N. Tauber Trust Account for the benefit of Defendant Tauber and his successors in interest and/or one or more of the other Defendants;

   d. A 1999 refinance for $60 million, none of which was used for the benefit of the Transpoint Building or the Adjacent Lot.

29. On information and belief, the proceeds of these refinances were, in part or whole, diverted to, or for the use of, Defendant Estate of Laszlo N. Tauber, and/or Defendants Tauber MD, Tauber I, Tauber II, LLC, Tauber VI,

LNT&A, Westwood Construction, and/or IHC, or their predecessors or successors in interest.

30. On January 2, 1999, Defendant Tauber deeded the Transpoint Building and the Adjacent Lot to Defendant Tauber I. In the deed for this transaction, Defendants asserted, "the general partners of the Grantor [DCJV] are the identical and only members of the Grantee [Tauber I]."

31. On January 29, 2004, Tauber I, by and through Defendant Droke, as Managing Member of Defendant Westwood, negotiated the sale of and conveyed the Transpoint Building to TBC Funding Corp.

32. On November 4, 2004, by special warranty deed, Defendant Tauber I conveyed the Adjacent Lot to Defendant Tauber VI. Defendant Droke, as Manager of Defendant Westwood (the managing member of Tauber I), executed this conveyance on behalf of Defendant Tauber I.

33. On December 15, 2004, by special warranty deed, Defendant Tauber VI conveyed the Adjacent Lot to Buzzards Point, LLC. Defendant Droke, as Manager of Defendant Westwood, the managing member of Defendant LNT&A Master, LLC, the sole member of Defendant Tauber VI negotiated and executed this conveyance.

34. At all times relevant to this Complaint, the Defendants continued to issue regular payments to the Plaintiffs under the description of "DC Bldg JV" and "DC Land JV."

**COUNT I, BREACH OF FIDUCIARY DUTY:**
**DIVERSION OF PROPERTY AND PROCEEDS OF REFINANCES**

35. The Plaintiffs repeat and reiterate each of the above-enumerated facts as if they were specifically restated here.

36. Defendants Tauber, Droke, Westwood, and/or IHC owed a fiduciary duty to the Plaintiffs as a result of their power and control over the Plaintiffs' property interests, held in trust by the Defendants, in the Transpoint Building and Adjacent Lot.

37. Defendants breached their fiduciary duties to the Plaintiffs when, knowingly, intentionally, and in gross negligence, they diverted property in which the Plaintiffs held an interest, without providing any value whatsoever in exchange therefore, when they took or received funds resulting from mortgages and refinances of the Transpoint Building and Adjacent Lot, used those funds for purposes other than for use by and for the Transpoint Building and Adjacent Lot, engaged in self-dealing (i.e. proceeds of the refinances, on information and belief, were used to pay Westwood Construction, whose president was Defendant Droke and which was a wholly owned subsidiary of Defendant IHC, whose president was also Defendant Droke, and who was the managing partner of Defendant Westwood, which limited liability company was/is the managing member of Tauber I, the successor in interest to the DCJV) and reduced the return of the Plaintiffs' investment.  These diverted funds were used, among other things, to make improvements to other properties owned by the Defendants and, in part, to otherwise enrich each of the Defendants financially.  Plaintiffs only became aware of said harm after

the distribution of proceeds from the sale of the Transpoint Building and the Adjacent Lot.

38. As a result of the aforementioned breaches of the Defendants' fiduciary duties to the Plaintiffs, the Plaintiffs suffered damages including but not limited to a reduction in the returns on the Plaintiffs' original investment.

39. Additionally, as a result of the aforementioned breaches of fiduciary duties, the Defendants caused the Plaintiffs to suffer emotional pain and suffering and out of pocket expenses, including attorney's, accountant's and other expert's fees.

## COUNT II, BREACH OF FIDUCIARY DUTY: ATTRIBUTION OF PROCEEDS FROM SALE OF TRANSPOINT BUILDING

40. The Plaintiffs repeat and reiterate each of the above-enumerated facts as if they were specifically restated here.

41. Defendants Tauber, Droke, Westwood and/or IHC owed a fiduciary duty to the Plaintiffs as a result of their power and control over the Plaintiffs' property interests, held in trust by the Defendants, in the Transpoint Building and Adjacent Lot.

42. Defendants breached their fiduciary duties to the Plaintiffs when, on information and belief, they knowingly, intentionally, and in gross negligence, attributed the proceeds of the sale of the Transpoint Building in such a way as to improperly favor the Plaintiffs' interest in the building, as opposed to the Plaintiffs' interest in the land. To wit, the sale was attributed 97.16% to the Building and only 2.48% to the land. This prejudiced the Plaintiffs since their

ownership interest in the land was twice that of their ownership interest in the Building.

43. As a result of the aforementioned breaches of the Defendants' fiduciary duties to the Plaintiffs, the Plaintiffs suffered damages including but not limited to a reduction in the returns on the Plaintiffs' original investment.

44. Additionally, as a result of the aforementioned breaches of fiduciary duties, the Defendants caused the Plaintiffs to suffer emotional pain and suffering and out of pocket expenses, including attorney's, accountant's and other expert's fees.

## COUNT III, BREACH OF FIDUCIARY DUTY: SALE OF THE ADJACENT LOT

45. The Plaintiffs repeat and reiterate each of the above-enumerated facts as if they were specifically restated here.

46. Defendants owed a fiduciary duty to the Plaintiffs as a result of their power and control over the Plaintiffs' property interests, held in trust by the Defendants, in the Transpoint Building and Adjacent Lot.

47. Defendants breached their fiduciary duties to the Plaintiffs when, on information and belief, they knowingly, intentionally, and in gross negligence, sold the Adjacent Lot for a fraction of its market value. To wit, the Defendants sold the Adjacent Lot for a mere $271,600.00, an amount that, on information and belief, was less than the amount for which they originally purchased it.

48. As a result of the aforementioned breaches of the Defendants' fiduciary duties to the Plaintiffs, the Plaintiffs suffered damages including but not limited to a reduction in the returns on the Plaintiffs' original investment.

49. Additionally, as a result of the aforementioned breaches of fiduciary duties, the Defendants caused the Plaintiffs to suffer emotional pain and suffering and out of pocket expenses, including attorney's, accountant's and other expert's fees.

### COUNT IV, DERIVATIVE CLAIM: SALE OF ADJACENT LOT

50. The Plaintiffs repeat and reiterate each of the above-enumerated facts as if they were specifically restated here.

51. As members of the DCJV, the Plaintiffs may bring this derivative claim on behalf of the DCJV and Tauber I to assert the Tauber I and the DCJV's rights against certain Defendants as explained in this Count.

52. Defendants Droke, Westwood and IHC owed a fiduciary duty to The DCJV and its successor in interest, Tauber I.

53. On or before November 4, 2004, Defendant Droke and Westwood negotiated the sale of the Adjacent Lot, owned by the Joint Venture and its successor in interest (Tauber I) to Tauber VI for a small fraction of its then current market value.

54. On or before December 15, 2004, Defendant Droke, and Westwood negotiated the sale of the Adjacent Lot to Buzzards Point LLC for $271,600.00, a small fraction of its then current market value.

55. By negotiating the sale of and selling the Adjacent Lot for a fraction of its market value, Defendants Droke and Westwood breached their fiduciary duties to the DCJV and Tauber I.

56. This breach of Defendants' fiduciary duties caused the DCJV and Tauber I economic harm in the form of diminished return on investment.

**COUNT V, DERIVATIVE CLAIM:**
**DIVERSION OF PROCEEDS FROM REFINANCES**

57. The Plaintiffs repeat and reiterate each of the above-enumerated facts as if they were specifically restated here.

58. As members of the DCJV, the Plaintiffs may bring this derivative claim on behalf of the DCJV and Tauber I to assert the Tauber I and the DCJV's rights against certain Defendants as explained in this Count.

59. Defendants Tauber, Droke, Westwood and/or IHC owed a fiduciary duty to The DCJV and its successor in interest, Tauber I.

60. Defendants breached their fiduciary duties to the DCJV and its successor in interest, Tauber I, when, knowingly, intentionally, and in gross negligence, they diverted property in which the DCJV and its successor in interest, Tauber I, held an interest, without providing any value whatsoever in exchange therefore, when they took and received funds resulting from mortgages and refinances of the Transpoint Building and Adjacent Lot, used those funds for purposes other than for use by and for the Transpoint Building and Adjacent Lot, and reduced the value of the DCJV and its successor in interest, Tauber I. These diverted funds were used among other things, in part, to make

improvements to other properties owned by the Defendants and, in part, to otherwise enrich each of the Defendants financially.

61. On information and belief, Defendants additionally engaged in improper self dealing in breach of their above-referenced fiduciary duties to the DCJV and its successor in interest, Tauber I, when they diverted funds from the refinances referenced herein to compensate Westwood Construction – which was a wholly-owned subsidiary of IHC (formerly Westwood Management Corporation), of which Defendant Droke was President – for services provided that did not directly benefit the DCJV or its successor in interest, Tauber I.

62. Plaintiffs only became aware of said harm after the distribution of proceeds from the sale of the Transpoint Building and the Adjacent Lot.

63. This breach of Defendant Droke and Westwood's fiduciary duties caused the DCJV and Tauber I economic harm in the form of diminished asset value and return on investment.

**RELIEF SOUGHT, NON-DERIVATIVE CLAIMS**

64. The Plaintiffs repeat and reiterate each of the above-enumerated facts as if they were specifically restated here.

65. The Plaintiffs seek, as relief for the non-derivative claims, as follows:

    a. A thorough accounting of the use of the proceeds of all refinances to which the Transpoint Building and Adjacent Lot were subjected;

    b. Damages in the amount of the diminished return on investment as a result of the Defendant's breaches of their fiduciary duties;

    c. Damages in the amount of any gains the Defendant's procured as a result of the diversion of any funds or proceeds from refinances or similar transactions that were not reinvested into the Transpoint Building and Adjacent Lot;

    d. The imposition of a constructive trust on any moneys or properties the Defendant's procured as a result of the diversion of proceeds of all refinances to which the Transpoint Building and Adjacent Lot were subjected;

    e. Punitive damages;

    f. Attorneys fees and costs;

    g. Any other relief permitted by law or equity.

## **RELIEF SOUGHT, DERIVATIVE CLAIMS**

66. The Plaintiffs repeat and reiterate each of the above-enumerated facts as if they were specifically restated here.

67. The Plaintiffs seek, as relief for the non-derivative claims, as follows:

    a. A thorough accounting of the use of the proceeds of all refinances to which the Transpoint Building and Adjacent Lot were subjected;

    b. Damages in the amount of the diminished worth as a result of the Defendant's breaches of their fiduciary duties;

    c. Damages in the amount of any gains any Defendant procured as a result of improper self dealing and/or other breaches of its/their fiduciary duties;

    d. The imposition of a constructive trust on any moneys or properties the Defendant's procured as a result of the diversion of proceeds of all refinances to which the Transpoint Building and Adjacent Lot were subjected;

    e. Punitive damages;

    f. Attorneys fees and costs;

    g. Any other relief permitted by law or equity.

    Respectfully Submitted,

_____
Leslie D. Alderman III (D.C. # 477750)
ALDERMAN & DEVORSETZ, PLLC
1025 Connecticut Ave., NW
Suite 1000
Washington, DC 20036
Tel: 202-969-8220
Fax: 202-969-8224

## **VERIFICATION RELATED TO DERIVATIVE CLAIMS**

1. The Plaintiffs were members and/or beneficial owners of the DCJV and its successors at the time of the transactions at issue in the Complaint.

2. This action is not a collusive one to confer jurisdiction on a court of the United States that it would not otherwise have.

3. On March 24, 2006, the Plaintiffs, through their undersigned counsel made a demand on the DCJV, Tauber I and their successors in interest to obtain the action sought herein.

4. The Plaintiffs' March 24, 2006 demand identified the alleged wrongdoers, described the factual basis of the alleged wrongful acts, described the harm that the DCJV, Tauber I and their successors in interest suffered as a result of the wrongful acts, and requested remedial relief.  The demand letter provided a deadline of April 14, 2006 for the DCJV, Tauber I and their successors in interest to inform the Plaintiffs of their willingness to file suit in order to attain the requested remedial relief.

5. On April 14, 2006, by counsel, who asserted that it "represents LNT&A Master LLC and its subsidiaries, one of which was successor in interest to the DCJV," LNT&A Master LLC – on behalf of Tauber I and the DCJV – refused to bring the requested civil action or otherwise provide remedial relief.

I declare, under penalty of perjury that the foregoing is true and correct.

                                                                                                _____
                                                                                                 Elliot Wolff, Personally and
                                                                                                 on Behalf of the Wolff Trust