**LASZLO N. TAUBER, M.D.**
WESTWOOD CENTER II, SUITE 401
5530 WISCONSIN ROAD
BETHESDA, MARYLAND 20815
(301) 657-8000

TELEX 90-6848 (WESTWOOD UD)
CABLE TAUBER MD
EASYLINK 62783466

December 6, 1984

Dear Member:

On the second of December, 1984, the annual investors meeting was held which differed greatly from the previous ones. I called to the attention of everyone that, with the help of God, I will be seventy years old this coming February. I stated that this is the time that everybody should start to put their house in order.

I have an additional burden since I am not only taking care of my own family's holdings, but those of my friends as well. My anxiety to leave without protecting everyone bothers me beyond words.

I stated that my family's interest in the different partnerships varies from 56.5% up to 87.5%, therefore, the only logical and right thing was for me to appoint a successor trustee or trustees who are members of my family. The previous successors designated are older than I am and have a lack of experience to qualify them to take my place. Likewise, no member of my family possesses the knowledge to conduct the business without outside advice and help. I therefore have appointed Bankers Trust Company of New York to be advisor to the successor trustee or trustees for a fee of less than 1%, depending on the size of the transaction. The everyday business will be carried out by the Westwood Management Corporation which has a long standing contract that is renewable by majority vote of the partnership interest. Therefore, the everyday business should not be a problem. In case the successor trustee or trustees decide to sell or mortgage any or all of the properties, they would be obligated to seek the advice of Bankers Trust. That is, the Bank will act only as an advisor but can fully block any transaction planned by the successor trustee or trustees.

In case of the incapacity of the successor trustee or trustees, Bankers Trust Company will act as a trustee with the same renumeration, however, it is not a binding contract. If the surviving partners are not satisfied with the performance of the Bank, they will be able to replace this Bank with any other reputable major bank by a majority vote of the partnership interest.

- 2 -

This arrangement, in my opinion, will give a safeguard against any misunderstanding which might develop in the future. This decision of mine should not reflect a lack of confidence in the previously appointed trustees, but rather their age and lack of involvement in the everyday business of the partnerships made it necessary to make this change.

In order to manage these properties, I had to come to the following conclusion. Because of my fiduciary duties, I have to consider the interest of every member of each partnership. I have to protect the minority interest holder, but it is my duty to protect the majority interest holder as well. My solution clearly favors the minority interest holder at the expense of the majority but the disadvantage at the present will be outweighed by the great benefit achieved in the future. Our long standing goal has been to merge all the partnerships into one single partnership. This must be achieved now with no further delay. In this way not only will we be able to manage all the properties, but we will also be prepared for a sale or merger into a larger company. This is the only way which we can achieve these objectives.

I shall be glad to discuss with anyone any special problems which they foresee arising as a result of the merge. However, regardless, the merge will be effective the 1st of January, 1985.

The following options will be available to each investor:

A) A cash payment based on the below schedule will be given to anyone who wants an outright sale. If you prefer, payments can be made on an installment basis which will carry 12% per annum interest. Please check "A" on the attached form if you desire this option and indicate whether you prefer a cash payment or payments on an installment basis.

B) Under this option, you would be guaranteed a stable cash flow payment for a guaranteed period of time. If the cash flow increases, you will receive 75% of the increased cash flow. After a guaranteed period of time, the 75% increase will be given to you until the property is sold. However, the base minimum will be eliminated. Example: After the guaranteed period of time, if the total net return would be less the the base return, then you receive the money which the partnership earns. In the case of a sale of the property, the amount due you would be calculated according to the percentage you own minus the existing mortgage at December 31, 1984. Example: if a 1% interest produced $4,000 income per year, you would be guaranteed this payment for ten years plus 75% of any increase in cash flow, i.e., if the cash flow increased to $6,000, you would receive the $4,000 base return plus $1,500 (75% of $2,000 increase). If the property is sold for $20,000,000 and the existing mortgage at 12/31/84 was $5,000,000, then each 1% share will receive $150,000 ($20,000,000 minus $5,000,000 divided by 100). Please check "B" on the attached form

- 3 -

if you desire this option.

C) This option is for those individuals who wish to participate in the new combined partnership. Your percentage in the new partnership will be calculated based on the value of the interests you merge into the new partnership. Please check "C" on the attached form if you desire to participate in the combined partnership.

D) If you chose "C", you have the additional option of purchasing other investors interests who desire to sell. Please indicate on the attached form the percentage you wish to purchase and also indicate whether you prefer to make cash or installment payments. Should you choose the installment basis to purchase these additional interests, I will have to establish a sinking fund for you or you can choose your own plan--however, the financial soundness of this plan must be approved by me at my sole discretion.

If there exists an unwillingness to purchase the additional partnership interests for sale, then those partnership interests will be allocated to the new partnership according to the price schedule outlined below--0.1% interest in the partnership represents $128,135.

This partnership allocation will follow the following pattern. If it is oversubscribed, the selection of the partners will be made according to the number of partnerships that they participate in. Preference is given at first to those who are partners in fourteen partnerships, then in thirteen partnerships, then twelve and so on. Your least chance to purchase this partnership allocation is if you are an investor in only one partnership.

After careful consultation with my advisors, I have placed the following values on the different partnerships:

**Westwood Joint Venture:**
a) Sales Price of 1% equals $200,000.00, based on a 15% capitalization of the present stable income. I took a relatively high capitalization since this venture has almost reached its peak. The Government renewed the lease on Main/Annex but has the right to cancel the lease on the 16th of May, 1988. The short time of the secured lease makes this partnership somewhat speculative. I anticipate that the $30,000.00 per 1% yearly income might be increased in the future to the level of $40,000.00 if the Government renews the lease. Therefore, the 15% capitalization seems to me to be fair and justified.

b) If the investor prefers to continue to receive the $30,000.00 yearly income, it will be guaranteed as a minimum for five years plus 75% of the overage.

- 4 -

**Parklawn Joint Venture:**
a) Sales Price of 1% equals $200,000.00. It is based on a 4.5% capitalization of the present stable income. I took a relatively low capitalization since the lease expires in five years, but it is still not assured that the Government will lease the building and if not, then it would take several years to fill this 1,750,000 sq. ft. building.

b) If the investor prefers to continue to receive the $9,000 yearly income, it will be guaranteed as a minimum for ten years plus 75% of the overage.

**Northern Virginia Joint Venture:**
a) 2% land and 1% building ownership represents $8,000.00 per year income. I took a 10% capitalization which will give to the investor in the case of an all cash sale, $80,000.00 for the above interest. (Break down for the land is $25,600.00 and $54,400.00 for the building.)

b) If the investor prefers to continue to receive the $8,000 yearly income, it would be guaranteed for a period of ten years plus 75% of the overage.

**District of Columbia Joint Venture:**
a) 2% land and 1% building ownership represents $8,000.00 per year income. I took a 10% capitalization which will give to the investor in the case of an all cash sale, $80,000.00 for the above interest. (Break down for the land is $25,600.00 and $54,400.00 for the building).

b) If the investor prefers to continue to receive the $8,000.00 yearly income, it would be guaranteed for a period of ten years plus 75% of the overage.

**Southwest Joint Venture:**
a) 2% land and 1% building ownership represents $8,000.00 per year income. I took a 10% capitalization which will give to the investor in the case of an all cash sale, $80,000.00 for the above interest. (Break down for the land is $25,600.00 and $54,400.00 for the building).

b) If the investor prefers to continue to receive the $8,000 yearly income, it would be guaranteed for a period of ten years plus 75% of the overage.

**Pennsylvania Avenue Joint Venture:**
a) Sales price for 1% equals $65,000.00. Potentially this partnership has no guaranteed increase of the rental income for an additional ten years, since we are in litigation with the District of Columbia Government and the outcome of this lawsuit is quite uncertain.

- 3 -

b) If the investor prefers to continue to receive the $2,000 yearly income, it would be guaranteed for a period of ten years plus 75% of the overage.

Glendale Joint Venture:
a) Sales price for 1% of the land equals $3,850, and sales price for 1% of the building is $5,500.

Park Avenue Joint Venture:
a) The rental income of this property in another sixteen years will decrease from $735,000.00 to $400,000. The only potential which this building has is that the master lessee might desire to pay an unreasonably high price to own the building. The sales price per 1% equals $15,000.

Galleria Joint Venture:
a) Since this building has potential, the sales price for 1% of the building equals $20,000.00, and the sales price for the land will be the amount of original price plus 10% ($7,150 per 1%).

b) The land will be repurchased according to the above formula regardless since our agreement provides the building owners to repurchase the land at any time. 1% building ownership would receive $2,000 per year for a guaranteed ten years plus 75% of the overage.

135 West 50th Street Joint Venture:
a) Sales price for 1% equals $350,000.00. Each investor will receive an additional $100,000.00 per 1% as a result of the refinancing which I expect to finish before year end.

b) Cash flow of $35,000.00 per year guaranteed for ten years plus 75% of the overage.

Columbia Plaza Office Building Joint Venture:
a) Sales price for 1% equals $80,000.00.

b) $2,000.00 per 1% per year guaranteed for ten years plus 75% of the overage. Explanation: This property is superbly located but has a 20 year government lease which cuts down the cash flow. However, due to the fact that the underlying land was purchased for $4,200,000.00 and the Swiss franc financing, all the realized earnings are used to pay off the cost of the land and mortgage.

Westwood & Associates:
a) Sales price per 1% equals the original investor payment which is $50,000.00.

Diversified Investment Joint Venture:
a) Sales price per 1% equals the original investor payment which is $60,000.00, but as only 60% was sold, total amount = $3,600,000.00

- 6 -

**23rd Street Joint Venture:**
a) Sales price per 1% equals the original investor payment (two years principal curtailment) which is $20,000. This partnership owns 52.5% of the apartments only at Columbia Plaza. The total mortgage curtailment was $850,000/1%.

Therefore, the total cost per 1% in the new venture is $1,281,350.00.

Please note that interest in Lakeside Plaza condominiums and in the note of Columbia Plaza Limited Partnership are not affected by this merge.

I preserve the right to delay the cash sale in case of hardship for the partnership.

If I do not receive any answer by the 20th of December, 1984, I will treat the investor's interest according to option "B", that is, continuing a guaranteed income. If anybody has any second thoughts and is not willing to cooperate, I will put his/her interest in trust, but I have to proceed with the above outlined plan without any further delay.

Hoping to have your cooperation.

Sincerely yours,

*[signature]*
Laszlo N. Tauber, M.D.


P.S.   The term "guaranteed income" used in Option "B" should have read "preferential income." Preferential income will be paid to investors selecting this option before income is paid to any other investor.